UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JOSE IBARRA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 12-CV-2127 |
| ) | |
| JAMES BAILEY, RONALD DERRICKSON, ) | |
| and LARRY GUSTIN, ) | |
| ) | |
| Defendants. ) | |

## OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#99) filed by Defendants James Bailey, Ronald Derrickson and Larry Gustin. This court has carefully reviewed the arguments of the parties and the documents filed by the parties. Following this careful and thorough review, Defendants' Motion for Summary Judgment (#99) is GRANTED.

## FACTS[1]

Plaintiff, Jose Ibarra, grew up and went to school in Mexico; he came to the United States in 2005 or 2006. Plaintiff was convicted and sentenced to the Illinois Department of Corrections (IDOC) in 2009. Plaintiff only knows a few words of English and has difficulty communicating with correctional staff. Sometimes other inmates interpret for him.

In August 2011, Plaintiff was transferred to Danville Correctional Center. On

---

[1] The facts are taken from Defendants' statement of undisputed facts, Plaintiff's Affidavit and the documents submitted by the parties, including the transcript of Plaintiff's deposition. This court has only included facts which are adequately supported by evidence in the record.

November 15, 2011, another inmate, LaShawn James,[2] was moved into Plaintiff's cell. Plaintiff had a low bunk permit at the time due to his medical issues. Plaintiff and James had issues over the bed because James wanted the low bunk. James did not speak Spanish, but would bring another Mexican in to interpret. At his deposition, Plaintiff testified that James told Plaintiff that, if Plaintiff did not give him the bed, he was going to fight Plaintiff.

Plaintiff testified that James woke him up on November 18 or 19 at around 11:00 p.m. and pulled him, saying he (James) wanted the bed. Plaintiff testified that he asked James to wait until the next day so he could talk to a prison official and James said that was fine. Plaintiff testified that he reported the issue to three officials the next day, one of whom was Defendant Bailey. Plaintiff testified that another inmate, Vincent Guerrero, came and joined in the conversation with the correctional officers. According to Plaintiff, he told Bailey everything that was going on with James. Plaintiff testified that Guerrero told Bailey that James was not a good person and Bailey responded that he knew who James was and that James "has a problem." In his responses to Plaintiff's First Set of Interrogatories, signed under oath, Bailey stated that he recalled speaking to Plaintiff through an interpreter about Plaintiff's request for a cell move. Bailey stated that he recalled Plaintiff telling him that Plaintiff did not get along with his cellmate, but Bailey did not get the sense that there was any threat of violence. Bailey referred Plaintiff to the kitchen to report his issues to Bailey's supervisor, Defendant Gustin.

---

[2] Plaintiff referred to his former cellmate as "James LaShawn" in his deposition and Defendants have also referred to him as James LaShawn. IDOC records, however, show that his name is "LaShawn James."

Plaintiff testified that he went to the kitchen and explained the whole thing to Gustin through an interpreter named Gonzalez. According to Plaintiff, he told Gustin that "my cellmate had told me he wanted the bottom bunk and, if I didn't give it to him, he was going to hit me today." Plaintiff testified that Gustin said he would come and talk to Plaintiff after he was done there, but he never came. In his responses to Plaintiff's First Set of Interrogatories, signed under oath, Gustin stated that he recalled speaking with Plaintiff and an interpreter about a cell move. Gustin said that he told the inmates he would take the information and submit it to the Assignment Committee. According to Gustin, it is up to the Assignment Committee to determine whether an inmate meets the criteria for a cell move. Gustin stated that he contacted the Assignment Committee to request a cell move for Plaintiff but does not recall whether he received a response. He also stated that he is not normally informed of the Assignment Committee's decision.

Plaintiff testified that, on December 14, 2011, he spoke with Defendant Derrickson. Plaintiff testified that Derrickson brought an interpreter, inmate Jose Mundo, to speak to Plaintiff. In his Affidavit, Plaintiff stated that he went to the control area for help because James was threatening to beat him. Plaintiff testified that he asked Derrickson for help and told Derrickson he was being threatened that he was going to get beaten up. In his Affidavit, Plaintiff stated that Derrickson called his cellmate James "who negated all." Plaintiff testified that Derrickson said he did not have the authority to move Plaintiff and had to speak to his supervisor, Gustin, who was watching over dietary during lunch. In his responses to Plaintiff's First Set of Interrogatories, signed under oath, Derrickson stated that both inmates

3

told him they would be fine waiting to speak with Gustin and he understood that there was no urgency in moving them. In his Affidavit, Plaintiff stated that Derrickson told him to go to his cell and, if something happened, press the emergency door button.

After lunch that day, there was an altercation in Plaintiff's cell. Plaintiff testified that he was lying down and James hit him. In his Affidavit, Plaintiff stated that he was resting and "felt a strong stroke" on his head. Plaintiff described how James assaulted him and stated that he put his hands in front of his face to try and shield himself from James' hits. Plaintiff stated that, when Derrickson came to the cell, he was vomiting blood and had a lot of injuries in his head, face and stomach. Plaintiff said he was taken by ambulance to a hospital outside of the prison.

Plaintiff received a disciplinary report because of the incident which occurred on December 14, 2011. The Adjustment Committee issued a Final Summary Report and found Plaintiff guilty of assaulting James. The Adjustment Committee found that Plaintiff and James were "engaged in a verbal confrontation that escalated into a physical confrontation, when I/M Ibarra wrapped his hand with a brown extension cord and struck I/M James in the mouth with a closed fisted blow which dislodged one of I/M James' teeth." The Adjustment Committee also found that Plaintiff removed an ink pen from his pants pocket and began to attempt to strike James with the ink pen and Plaintiff and James then began to struggle with one another. The Report stated that James had stab wounds from an altered pen and Plaintiff admitted he does alter his pens. Plaintiff was disciplined with: 1 year C Grade status; 1 year segregation; revocation of good conduct credits of one year; disciplinary transfer; restitution;

and 1 year commissary restriction. The Adjustment Committee findings have not been overturned.

## PROCEDURAL HISTORY

On May 8, 2012, Plaintiff filed a pro se Complaint (#1), brought pursuant to 42 U.S.C. § 1983, against Warden Keith O. Anglin, John Myers, Larry Gustin, Judy Oakley, Joseph T. Smith, James Bailey, Correctional Officer Bradwer, Dr. Tweedy, Jaime Hernandez and Ronald Derrickson. Plaintiff alleged that, while he was incarcerated at Danville Correctional Center, he complained to various Defendants that his cellmate was threatening to hurt him. Plaintiff alleged that he asked to be separated from the cellmate, but nothing was done to protect him. Plaintiff alleged that he was attacked and injured by his cellmate on December 14, 2011. Plaintiff alleged that he suffered a broken nose as well as injuries to his eyes, mouth and head. Plaintiff alleged that Defendants Anglin, Gustin, Bailey, Bradwer, Tweedy, Hernandez and Derrickson were deliberately indifferent to a serious risk of harm, in violation of his constitutional rights. Plaintiff also alleged that Defendants Myers, Oakley and Smith subjected him to cruel and unusual punishment and denied him his right to due process because there were flaws in the administrative disciplinary procedure whereby he was found guilty of assaulting his cellmate on December 14, 2011.

On June 20, 2012, this court held a merit review hearing and ordered that Plaintiff's case could proceed. Subsequently, all Defendants except Smith and Bradwer waived service. On October 9, 2012, Defendants Anglin, Bailey, Derrickson, Gustin, Hernandez, Myers and Oakley filed a Motion to Dismiss (#48) and a Memorandum in Support (#49). Defendants

argued that Plaintiff's Complaint was deficient under the federal pleading standard as to any claims against Defendants Anglin, Gustin and Hernandez. Defendants also argued that Plaintiff failed to state a claim upon which relief can be granted for a violation of due process. Defendants noted that, to the extent that Plaintiff was challenging the finding of guilt by the Adjustment Committee or the discipline imposed, such a claim was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In addition, Defendants argued that Plaintiff was precluded from suing Defendants in their official capacities and was barred from seeking the injunctive relief he requested.

On October 19, 2012, Plaintiff filed a pro se Response to Motion to Dismiss (#54) and asked this court to deny Defendants' Motion. On October 30, 2012, Plaintiff filed a Motion for Leave to File an Amended Complaint (#61).

On November 2, 2012, this court entered an Opinion (#63). This court concluded that the factual allegations in Plaintiff's pro se Complaint (#1) regarding Defendants Anglin, Gustin and Hernandez were insufficient and that Plaintiff was precluded from suing Defendants in their official capacities and was barred from seeking the injunctive relief he requested. This court also concluded that the doctrine set out in *Heck* applied to Plaintiff's claims and required the dismissal of Plaintiff's claim that he was subjected to cruel and unusual punishment and denied his right to due process because of flaws in the administrative disciplinary procedure. Therefore, Plaintiff's claim regarding the disciplinary proceeding was dismissed and Defendants Myers, Oakley and Smith were terminated as Defendants.

This court noted that, in *Heck*, the United States Supreme Court held that "the plaintiff in an action under 42 U.S.C. § 1983 may not pursue a claim for relief that implies the invalidity of a criminal conviction, unless that conviction has been set aside by appeal, collateral review, or pardon." *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008), *citing Heck*, 512 U.S. at 486-87. In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended this doctrine to the decisions of prison disciplinary tribunals. *Gilbert*, 512 F.3d at 900. The Supreme Court in *Edwards* held that claims which "necessarily imply the invalidity of the deprivation of [an inmate's] good-time credits" are not cognizable under 42 U.S.C. § 1983 unless the prison disciplinary decision has otherwise been invalidated, for example by expungement, a state court order, or a writ of habeas corpus. *Edwards*, 520 U.S. at 646-48. *Heck* and *Edwards* prevent a litigant from contradicting a valid judgment. *Gilbert*, 512 F.3d at 901. This court stated that, because the Adjustment Committee's finding of guilty has not been invalidated, Plaintiff is bound by this finding. *See Gilbert*, 512 F.3d at 900.

This court further noted that there may be *Heck* problems with Plaintiff's claim of deliberate indifference to a serious risk of harm as well. This court stated that Plaintiff was claiming that Defendants failed to protect him and separate him from his cellmate, resulting in Plaintiff's injuries when his cellmate assaulted him on December 14, 2011. This was even though disciplinary sanctions were imposed on Plaintiff based upon Plaintiff's conduct on the same date, December 14, 2011. Plaintiff was found guilty of assaulting his cellmate (fighting with a weapon), a finding Plaintiff cannot challenge based upon *Heck* unless the disciplinary decision has been invalidated. If the disciplinary decision has not been

invalidated, *Heck* and *Edwards* preclude Plaintiff from maintaining a civil rights suit if a judgment in his favor would "necessarily imply" that the ruling in his prison disciplinary case was invalid. *See Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011). *Heck* "forbids a prisoner in his civil rights case to challenge a finding in his criminal or prison-discipline case that was essential to the decision in that case; if he insists on doing that, the civil rights case must be dismissed." *Moore*, 652 F.3d at 723, *citing Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003). However, "[o]nly a claim that 'necessarily' implies the invalidity of a conviction or disciplinary board's sanction comes within the scope of *Heck*." *Gilbert*, 512 F.3d at 902.

This court concluded that Plaintiff's claim is not necessarily barred by *Heck*. This court stated that Plaintiff may be able to allege that Defendants failed to protect him from an assault by his cellmate without contesting that he assaulted his cellmate on the same date. However, this court warned Plaintiff that he could not challenge the findings made by the disciplinary board in stating his claim. *See Moore*, 652 F.3d at 726. This court allowed Plaintiff 30 days to file an amended complaint.

On November 19, 2012, Plaintiff filed his Amended Complaint (#71) against Defendants Anglin, Bailey, Derrickson, Gustin, Hernandez and Tweedy. Plaintiff alleged that Defendants ignored his numerous complaints of a serious risk of harm and therefore were deliberately indifferent to a serious risk of harm, in violation of his constitutional rights. On December 13, 2012, Defendants Bailey, Derrickson and Gustin filed their Answer (#80) to Plaintiff's Amended Complaint.

Defendant Tweedy and Defendants Anglin and Hernandez were allowed to file Motions to Dismiss (#76, #84).  On April 5, 2013, this court entered an Opinion (#95) and granted the Motions to Dismiss.  This court concluded that Plaintiff's Amended Complaint did not state plausible claims against Tweedy, Anglin or Hernandez.

On August 15, 2013, Defendants Bailey, Derrickson and Gustin filed a Motion for Summary Judgment (#99) and a Memorandum in Support (#100) with attached exhibits.  On September 27, 2013, Plaintiff filed his pro se Response to Motion for Summary Judgment (#105) with his attached Affidavit.  Plaintiff also filed a pro se Memorandum in Opposition (#106) with attached exhibits.  On October 16, 2013, Defendants filed their Reply (#107).

ANALYSIS

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010).  However, a court's favor toward the nonmoving party does not

extend to drawing "[i]nferences that are supported by only speculation or conjecture." *Singer*, 593 F.3d at 533, *quoting Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008). The court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial.  *Dykema v. Skoumal*, 261 F.3d 701, 704 (7th Cir. 2001); *Townsend v. Hinsley*, 2007 WL 731454, at *2 (S.D. Ill. 2007).

## DELIBERATE INDIFFERENCE CLAIM

In their Memorandum of Law in Support of the Motion for Summary Judgment, Defendants argued that they are entitled to summary judgment because, based upon the facts of this case, Plaintiff cannot meet his burden to establish that Defendants were aware of a serious risk to Plaintiff's safety and disregarded the risk. Defendant also argued that they are entitled to summary judgment because, under *Heck*, Plaintiff cannot present evidence to support his theory because it would directly counter findings made by the disciplinary board. Defendants argued that Plaintiff cannot support a claim for deliberate indifference where it has been determined that Plaintiff instigated the physical altercation at issue in this suit. Defendants also argued that they are entitled to summary judgment based on qualified immunity.

In his Memorandum in Opposition (#106), Plaintiff argued that Defendants Bailey, Gustin and Derrickson were aware of the risk of a specific threat to Plaintiff's safety and failed to act reasonably. Plaintiff also argued that this court has already found that Plaintiff's claim is not necessarily barred by *Heck.* Plaintiff argued that he is not challenging the adjustment committee findings. In addition, Plaintiff argued that Defendants are not entitled

to qualified immunity.

A prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). Once a prison official knows of a serious risk of harm to an inmate, he has an obligation "to take reasonable measures to abate it." *Dale*, 548 F.3d at 569, *quoting Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). "Of course, an official's response may be reasonable even if it fails to avert the harm." *Dale*, 548 F.3d at 569, *citing Borello*, 446 F.3d at 747. Even if Plaintiff has shown some negligence on the part of Defendants, "[n]either negligence nor even gross negligence is a sufficient basis for liability" for deliberate indifference. *See Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *see also Rapier v. Kankakee County*, 203 F. Supp. 2d 978, 983 (C.D. Ill. 2002) ("Deliberate indifference is more than negligence and approaches intentional wrongdoing").

This court agrees with Defendants that the facts here are not sufficient to show that Bailey, Gustin and Derrickson were aware of a substantial risk of serious harm and failed to take reasonable measures to abate it. In any case, however, this court concludes that Plaintiff's claim is clearly barred by *Heck*. In this court's Opinion (#63), this court noted that there may be *Heck* problems with Plaintiff's claim of deliberate indifference to a serious risk of harm. This court concluded, however, that Plaintiff's claim was not necessarily barred by

*Heck*. This court stated that Plaintiff may be able to allege that Defendants failed to protect him from an assault by his cellmate without contesting that he assaulted his cellmate on the same date.[3] This court warned Plaintiff, however, that he could not challenge the findings made by the disciplinary board in stating his claim. *See Moore*, 652 F.3d at 726.

This court concludes that, even though Plaintiff did not directly challenge the findings of the Adjustment Committee in his amended complaint, his allegations are inconsistent with the validity of the Adjustment Committee's findings. Here, the Adjustment Committee's Final Summary Report stated that Plaintiff and James engaged in a verbal confrontation which escalated into a physical confrontation when Plaintiff wrapped his hand with a brown extension cord and struck James in the mouth. The Report also stated that James had stab wounds from an altered pen. Plaintiff's claim is that Defendants were deliberately indifferent because they failed to protect him from an attack by James. According to Plaintiff, he was lying down resting and James attacked him. This version of events is contrary to and inconsistent with the findings of the Adjustment Committee which led to him being disciplined. Because prevailing on his assertion that he did nothing and was attacked by James would undermine the Adjustment Committee's finding that he was the attacker, his case is barred by *Heck*. *See Moore*, 652 F.3d at 725 (claim for relief based on the plaintiff being the victim of an utterly unprovoked assault barred by *Heck*).

---

[3] This court notes that this observation was based upon the possibility of circumstances, such as two separate incidents on the same day, which would allow Plaintiff to claim that Defendants failed to protect him from an assault by James even though he was found to have assaulted James.

This is not a case where Plaintiff can remain "agnostic" about his disciplinary conviction. *Cf. Moore*, 652 F.3d at 724-26; *see Harris v. Ashby*, 2012 WL 414255, at *2 (C.D. Ill. 2012). Plaintiff cannot be the attacker, as found by the Adjustment Committee, and still have a claim that Defendants failed to protect him from an attack from James. *See Lemmons v. Durant*, 2011 WL 4633104, at *3 (C.D. Ill. 2011) ("starting a fight or voluntarily participating in one and then getting the worst of it does not create a failure to protect claim"). This court concludes that Plaintiff's claim against Defendants necessarily implies the invalidity of the Adjustment Committee Report and the discipline imposed. *See Townsend*, 2007 WL 731454, at *4. Therefore, Plaintiff's claim against Defendants is barred by *Heck* and *Okoro*. *See Heck,* 512 U.S. at 486-87*; Okoro,* 324 F.3d at 490*; Townsend*, 2007 WL 731454, at *4. Defendants are therefore entitled to summary judgment on Plaintiff's claim. *See Townsend*, 2007 WL 731454, at *4.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion for Summary Judgment (#99) is GRANTED. Judgment is entered in favor of Defendants and against Plaintiff on Plaintiff's claim.

(2) This case is terminated.

(3) If Plaintiff wishes to appeal the judgment, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(c). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the

appeal is found to be non-meritorious, Plaintiff may also accumulate a strike under 28 U.S.C. § 1915(g).

ENTERED this 2nd day of December, 2013.


s/MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE